**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>STATE OF MARYLAND,<br>100 State Circle, Annapolis, MD 21401<br><br>ANTHONY BROWN, Attorney General of the State of Maryland, in his Official Capacity,<br>200 St. Paul Place, Baltimore, MD 21202<br><br>     Defendants. | No. 1:26-cv-2719<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1.      Within hours of assuming the Presidency, President Donald J. Trump took immediate action to fulfill his campaign promise to the American people and declared that a "national emergency exists at the southern border of the United States" caused by the unprecedented "illegal entry of aliens" into the country. Proclamation 10,886, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025). This declaration was necessary given the prior Administration's open border policies that incentivized disregard for laws passed by Congress. As a result, millions of illegal aliens settled in our Nation's communities in flagrant violation of federal law, resulting in "significant threats to national security and public safety," with aliens "committing vile and heinous acts against innocent Americans." Executive Order 14,159, *Protecting the American People Against*

*Invasion*, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025). Further exacerbating this national crisis, so-called sanctuary cities seek to provide some of these criminal aliens with safe harbor from federal law enforcement detection. The consequences of those misguided policies are dire. Sanctuary cities welcome aliens to live and work in American communities whose citizens may become victims of crimes committed by those same aliens. This national crisis underscores the vital importance of the Executive "[e]nforcing our Nation's immigration laws." *Id.*

2.      Despite the known dangers of such sanctuary policies, the State of Maryland insists on placing obstacles in the way of federal enforcement of our Nation's immigration laws. This year, the Maryland legislature enacted Senate Bill 791, titled the Community Trust Act. The Act's purpose and effect is to obstruct federal law enforcement and thwart the constitutional obligation of the President of the United States to take care that the immigration laws enacted by Congress are enforced. *See* Exec. Order 14,287, *Protecting American Communities from Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025). Such blatant disregard for federal laws that have been on the books for decades is not merely a political disagreement or passive abstention; it is deliberate, disruptive action that jeopardizes the public safety for all Americans. The Supremacy Clause of the United States Constitution prohibits a state from obstructing Congress and the Executive in this manner.

3.      Accordingly, the United States brings this declaratory and injunctive action to prohibit the State of Maryland from enforcing the Community Trust Act, S.B. 791 (2026). The Act unlawfully interferes with, regulates, and discriminates against the Federal Government's enforcement of federal immigration law in violation of the Supremacy Clause. *See generally* S.B. 791.

4.     The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the U.S. Constitution, numerous acts of Congress, and binding U.S. Supreme Court precedent. Indeed, Congress last year strengthened that authority with the enactment of the Laken Riley Act, S. 5, 119th Cong. (2025), which "mandates the federal detention of illegal immigrants who are accused of theft, burglary, assaulting a law enforcement officer, and any crime that causes death or serious bodily injury."[1]

5.     The challenged provisions of Maryland law reflect an effort to obstruct the operation of federal immigration law and to impede the consultation and communication between federal, state, and local law enforcement officials that is necessary for federal officials to carry out federal immigration law and keep Americans safe. In the words of the Senate Minority Whip, that makes the Community Trust Act "one of the most dangerous and wrong bills [he's] ever seen in Annapolis."[2]

6.     The Community Trust Act impedes the Federal Government's ability to regulate immigration and take enforcement actions against illegal aliens by preventing state and local law enforcement officials from assisting with federal civil immigration enforcement. Under these laws, state and local officers and facilities are unable to comply with immigration detainers and civil immigration warrants in most instances. They are also generally prohibited from providing information to federal immigration authorities at all, including regarding the custody status or release of a targeted illegal alien. And the Community Trust Act limits the ability of state and local law enforcement officers to work with federal officers to effect the safe transfer of such individuals

---

[1] Press Release, DHS, *President Trump Signs the Laken Riley Act in Law* (Jan. 29, 2025), https://www.dhs.gov/news/2025/01/29/president-trump-signs-laken-riley-act-law [https://perma.cc/8BPU-2J6X].

[2] Jeff Morgan, *Governor Moore allows Community Trust Act to become law without his approval, signs youth charging reform*, WMAR (May 26, 2026), https://www.wmar2news.com/local/governor-moore-allows-community-trust-act-to-become-law-without-his-approval-signs-youth-charging-reform [https://perma.cc/VY3P-X8GR].

to federal immigration custody, even when federal officials present a federal administrative warrant.

7.      Moreover, in June, the Maryland Attorney General's Office issued guidance on interpreting the Community Trust Act.[3] That guidance confirms that, in Maryland's view, its own "State laws control when State and local officers may provide information or assistance for the purposes of immigration enforcement, when they must do so, and when such assistance is prohibited."[4]

8.      These provisions intentionally obstruct the sharing of information and rendering of other assistance envisioned by Congress, thereby impairing federal detention of removable aliens, including dangerous criminals, as required by federal law. They further require federal officials to procure judicial warrants before local correctional facilities will transfer illegal aliens into their custody, even though Congress has made an explicit policy choice that such removals can be effectuated by *civil* arrest warrants for immigration enforcement and even though courts have upheld the lawfulness of that choice. By directing local employees to refuse to transfer such aliens to federal officials in a secure environment, the Community Trust Act has the natural and foreseeable result of releasing such aliens onto the streets, where they all too often reoffend and commit serious crimes.[5]

---

[3] Guidance Memorandum, Maryland Office of the Attorney General, *Local Enforcement of Federal Immigration Law: Legal Guidance for Maryland State and Local Law Enforcement Officials* (June 2026), https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/Law%20Enforcement%20Immigration%20Guidance%2006.22.2026%20Update%20%28FINAL%29.pdf [https://perma.cc/M6ZL-9WUU] ("Guidance").

[4] *Id.* at 1.

[5] *ICE arrests Guatemalan alien charged with murder, assault after release by noncooperative jurisdiction*, U.S. Immigration and Customs Enforcement (Apr. 15, 2025), https://www.ice.gov/news/releases/ice-arrests-guatemalan-alien-charged-murder-assault-after-release-noncooperative [https://perma.cc/W9BU-YKSD]; *ICE arrests violent criminal alien after sanctuary jurisdiction released him despite immigration detainer*, U.S. Immigration and Customs Enforcement (Feb. 6, 2026), https://www.ice.gov/news/releases/ice-arrests-violent-criminal-alien-after-sanctuary-jurisdiction-released-him-despite [https://perma.cc/3TS8-BKEL].

9.      The Supremacy Clause prohibits the State of Maryland from obstructing the Federal Government's ability to enforce laws that Congress has enacted or to take actions entrusted to it by the Constitution. The Supremacy Clause also provides that federal statutes prevail over conflicting state or local laws. And the Supremacy Clause prohibits states and localities from directly regulating or singling out the Federal Government for adverse treatment—as the challenged laws do—thereby violating the doctrine of intergovernmental immunity twice over.

10.     Accordingly, the provisions challenged here are unlawful and cannot stand.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

12.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and a substantial part of the acts or omissions giving rise to this action arose from events in this District.

13.     This Court has authority to provide the relief requested under its inherent equitable powers, the Supremacy Clause, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 1651, 2201, 2202.

## PARTIES

14.     Plaintiff is the United States of America. It regulates immigration under its constitutional, statutory, and inherent sovereign authorities. It is responsible for enforcing the federal immigration laws through its agencies—including the Departments of Justice, State, Labor, and Homeland Security ("DHS"), along with DHS's component agencies, including U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").

15.     Defendant State of Maryland is a State of the United States with a principal address of 100 State Circle, Annapolis, MD 21401, in Anne Arundel County.

16.     Defendant Anthony Brown is the Attorney General of Maryland with a principal address of 200 St. Paul Place, Baltimore, MD 21202, in Baltimore City, and is being sued in his official capacity as the State of Maryland's chief law enforcement official charged with enforcing and defending the Community Trust Act.

## CONSTITUTIONAL AND STATUTORY BACKGROUND
## FEDERAL POWER OVER IMMIGRATION

17.     "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring). This authority stems from "the National Government's constitutional power to 'establish an uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Arizona*, 567 U.S. at 394 (citations omitted). Those inherent rights and obligations as an independent Nation include a duty to control the Nation's borders to ensure the safety and flourishing of its citizens. *See Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893); *Ping v. United States*, 130 U.S. 581, 603–04 (1889); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

18.     The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

**RELEVANT STATUTES**

19.     Exercising this authority, the Federal Government has devised an "extensive and complex" statutory scheme for the "governance of immigration and alien status." *Arizona*, 567 U.S. at 395. This scheme codifies the Executive's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or are found to be, unlawfully in the United States. *E.g.*, 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231. Taken together, "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 396.

20.     Federal immigration authorities also "shall have power without warrant … to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). Federal immigration authorities are further authorized to issue subpoenas "concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service," and federal district courts are authorized to issue orders requiring individuals to comply with such subpoenas. *See* 8 U.S.C. § 1225(d)(4).

21.     Congress has also codified basic principles of cooperation and comity between state and local authorities and the Federal Government. For example, federal law contemplates that removable aliens in state custody who have been convicted of state or local offenses will generally serve their state or local criminal sentences before being subject to removal but will be taken into federal custody upon the expiration of their state prison terms. *See* 8 U.S.C. §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4). Further, federal authorities must "make available" to state and local authorities "investigative resources … to determine whether individuals arrested by such authorities for aggravated felonies are aliens[.]" 8 U.S.C. § 1226(d)(1)(A). Likewise, federal officials must also "designate and train officers and employees … to serve as a liaison to" state

and local officials "with respect to the arrest, conviction, and release of any alien charged with an aggravated felony[.]" *Id.* § 1226(d)(1)(B); *see id.* §§ 1226(c), 1231(a).

22.    "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. "Absent any cooperation at all from local officials," the immigration system—like other federal programs—"may fail or fall short of [its] goals[.]" *New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999). Congress has therefore directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Likewise, "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from" "[m]aintaining" "information regarding the immigration status, lawful or unlawful, of any individual," "[s]ending such information to, or requesting or receiving such information from" DHS, or "[e]xchanging such information with any other Federal, State, or local government entity." *Id.* § 1373(b). These provisions both regulate and facilitate the Federal Government's regulation of private parties.

23.    Congress also authorized states and localities "to cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B). Additionally, Section 287(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C § 1357(g), authorizes the Secretary of DHS to enter into written agreements with state or local law enforcement permitting designated officers to perform specified

federal immigration enforcement functions. Participation is voluntary and designated officers receive training at the Federal Government's expense. When a State or locality decides to participate, its officers act pursuant to federal authority under federal direction and oversight.

24.    In effectuating these provisions, DHS may issue an "immigration detainer" that "serves to advise another law enforcement agency that [DHS] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a); *see* 8 U.S.C. §§ 1103(a)(3), 1226(a), (c), 1231(a), 1357(d). An immigration "detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody[.]" 8 C.F.R. § 287.7(a).

25.    Upon issuance of a detainer "for an alien not otherwise detained by a criminal justice agency," that agency "*shall* maintain custody of the alien for a period not to exceed 48 hours … in order to permit assumption of custody by the Department." *Id.* § 287.7(d) (emphasis added). And in some instances, DHS is statutorily required, upon request from local authorities, to consider whether to issue a detainer for an alien in local custody. *See* 8 U.S.C. § 1357(d) (addressing violations of laws regulating controlled substances). In other cases, DHS is required to issue a detainer for certain aliens, including any alien who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii). And in other instances, the INA authorizes immigration officers to detain an alien based on an administrative warrant of arrest. *Id.* § 1226(a). Such an alien may be "arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.*

26.     Congress further sought to affirmatively penalize efforts to obstruct immigration enforcement by, among other things, prohibiting the "conceal[ing], harbor[ing], or shield[ing] from detection, or attempts to" accomplish the same, of any "alien in any place, including any building or any means of transportation." *Id.* § 1324(a)(1)(A)(iii).

## FACTUAL BACKGROUND

27.     The Community Trust Act was enacted into law as emergency legislation. *See* S.B. 791.

28.     The Act provides that a local correctional facility (defined as "a correctional facility that is operated" by "one or more counties" or by "a municipal corporation," Md. Code Ann., Correctional Servs. § 1-101(l)[6]) may not "inquire about or investigate an individual's citizenship, immigration status, or place of birth." *Id.* § 8-805(b)(2)(i).

29.     The Act provides that local correctional facilities may not "detain or prolong the detention of an individual … for the purpose of investigating the individual's citizenship or immigration status; based on the suspicion that the individual has committed a civil immigration violation; *or at the request of federal immigration authorities unless presented with a valid judicial warrant*." *Id.* § 8-805(b)(2)(ii) (emphasis added).

30.     The Act provides that local correctional facilities may not "notify federal immigration authorities that an individual is in custody unless required by a valid court order or judicial warrant." *Id.* § 8-805(b)(2)(iii).

---

[6] The Community Trust Act additionally defines "local correctional facility" to include the Baltimore City Detention Center and the centralized booking facility in Baltimore City that is operated by the Division of Pretrial Detention and Services in the Department of Public Safety and Correctional Services.

31.     The Act provides that local correctional facilities may not "transfer an individual to federal immigration authorities unless presented with a valid judicial warrant." *Id.* § 8-805(b)(2)(iv).

32.     The Act provides that law enforcement agents "may not, during the performance of regular police functions[,] … provide federal immigration authorities with information about an individual obtained in the course of the law enforcement agent's duties unless required by a valid court order." Md. Code Ann., Crim. Proc., § 5-104(b)(2)(v).

33.     The Act specifies that a "court order" or "judicial warrant" does "*not* include a document issued by the United States Department of Homeland Security," "the United States Department of Justice," or "any successor agency." *Id.* § 5-104(a)(3); Md. Code Ann., Corr. Servs. § 8-805(a)(3), (a)(6) (emphasis added).

34.     Senator Clarence Lam—one of the sponsors of the Community Trust Act—confirmed its intent to impede federal immigration enforcement in urging the passage of the Act as "incredibly important," because of the need "to prevent ICE from coming through our prisons and through our communities to continue their deportation campaign."[7]

35.     Opponents of the Act recognized the Community Trust Act for what it is—a bill to turn Maryland into a sanctuary state. House Minority Whip Jesse Pippy warned that the Act "[is] going to have consequences," and that "[m]aking Maryland a sanctuary state will further bankrupt [the state]."[8] Another House member proposed changing the bill's title to the "Maryland Sanctuary

---

[7] William J. Ford, *Advocates to legislators: 'Pass the Community Trust Act now'*, Maryland Matters (Apr. 9, 2026), https://marylandmatters.org/2026/04/09/advocates-to-legislators-pass-the-community-trust-act-now/.

[8] *William J. Ford, After marathon session, House approves amended version of Community Trust Act,* The Southern Maryland Chronicle (Apr. 13, 2026), https://southernmarylandchronicle.com/2026/04/13/after-marathon-session-house-approves-amended-version-of-community-trust-act/ [https://perma.cc/2SVX-7Y8Q].

State Act of 2026," so "that everybody knows when they look at the bill, they know exactly what it does."[9]

36. Even Governor Moore, who declined to sign the bill, acknowledged that the Community Trust Act "presents real implementation challenges."[10]

37. The Community Trust Act thus became law under the Maryland Constitution's procedures for legislation which the Governor neither signs nor vetoes. Md. Const. art. II, § 17.

38. After the Community Trust Act became law, the Maryland Office of the Attorney General issued guidance on implementing the Act. The Guidance emphasized that "[c]onstitutional guardrails and Maryland State laws control when State and local officers may provide information or assistance for the purposes of immigration enforcement, when they must do so, and when such assistance is prohibited." Guidance at 1. According to the Guidance, the Act governs "the extent to which State and local correctional facilities may *comply* with detainer requests." *Id.* at 7 (emphasis added).

39. The Guidance confirms the breadth of the Act.

    a. It specifies that "federal immigration authorities" refers "primarily to ICE, CBP, and the United States Citizenship and Immigration Services," *id.* at 4, and that "the term may also encompass other federal agencies that have an immigration enforcement mission," *id.* at 4 n.17.

    b. It emphasizes that Maryland officers generally "may not share … information about an individual with federal immigration authorities, including an individual's

---

[9] *Id.*

[10] Mike Hellgren, *Immigration bills limiting Maryland's cooperation with ICE will become law without Governor's signature; sheriffs plan lawsuit*, CBS News (May 22, 2026), https://www.cbsnews.com/baltimore/news/immigration-bills-limiting-marylands-cooperation-with-ice/ [https://perma.cc/C5F4-8EHU].

physical location, observed activities, personal information, or contact information." *Id.* at 5.

c.  It emphasizes that "Maryland officers may not share other information about an individual with federal immigration authorities, including an individual's physical location, observed activities, personal information, or contact information." *Id.*

d.  It advises that "local facilities may not give ICE advance notice of a non-convicted person's release date—regardless of whether ICE has issued a detainer requesting this information—or provide ICE with any other information about the person's custody status, absent a court order or judicial warrant." *Id.* at 7.

e.  It expounds that "advance release notification constitutes a notification 'that an individual is in custody' and also amounts to a step towards a de facto 'transfer' for purposes of the Act's restrictions on those forms of cooperation." *Id.*

**THE CHALLENGED PROVISIONS' IMPACT ON FEDERAL IMMIGRATION ENFORCEMENT**

**A.  Congress's Scheme of Cooperation**

40.  The Community Trust Act prohibits even the most basic cooperation with federal officials. Congress, in comity to the States, permitted state and local jurisdictions to fully punish aliens for state criminal violations prior to removal. *See* 8 U.S.C. § 1231(a)(4)(A) (providing that, subject to limited exceptions, federal agents "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment"). But Congress crafted a statutory scheme that clearly envisioned the Federal Government being able to detain and remove those aliens once their state proceedings and sentences concluded.

41.  Congress specified that the removal period begins immediately upon release from state criminal custody, *id.* § 1231(a)(1)(B)(iii), and detention during that period is mandatory, *id.*

§ 1231(a)(2); *see also* 8 U.S.C. §§ 1226(c)(3), 1357(d) (directing immigration officers to obtain a detainer to facilitate the transfer of criminal aliens from state to federal custody). Congress granted this permission expecting that states would then facilitate, or at the very least not obstruct, detention of criminal aliens by federal immigration authorities. For example, if ICE lacks knowledge of a criminal alien's release date from state custody, ICE cannot exercise its statutory responsibility of effecting an arrest upon the alien's release. The same is true for CBP in many instances.

42.    Federal statutes and regulations also reflect the deliberate decision not to require a judicial warrant or court order before transferring or arranging to transfer an illegal alien to federal custody. 8 C.F.R. § 287.7(a); 8 U.S.C. §§ 1226, 1357.

43.    Furthermore, federal law contemplates that DHS will be able to inspect all applicants for admission and take all appropriate action against those found to be inadmissible to the United States, even those transferred to state or local custody pending prosecution. *See id.* §§ 1182, 1225(b)(2); 8 C.F.R. § 235.1. And, to facilitate coordination between state and local officials and the Federal Government, Congress expressly prohibited any federal, state, or local government entity or official from prohibiting, or in any way restricting, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," 8 U.S.C. § 1373(a), or from maintaining and exchanging such information with other law enforcement entities, *id.* § 1373(b); *see id.* § 1644.

**B.    The Community Trust Act and Policy Guidance Conflict with Congress's Command**

44.    Maryland law directly conflicts with the scheme identified above. Under the Community Trust Act and accompanying guidance, state and local officers are effectively prohibited from complying with immigration detainers or civil immigration warrants and

subpoenas (with limited exceptions). They are also prevented from sharing critical immigration information.

45. The Community Trust Act forbids "detain[ing] or prolong[ing] the detention of an individual … at the request of federal immigration authorities unless presented with a valid judicial warrant," Md. Code Ann., Corr. Servs. § 8-805(b)(2)(ii), even though federal law contemplates criminal justice agencies "maintain[ing] custody of the alien for a period not to exceed 48 hours" when presented with a detainer, 8 C.F.R. § 287.7(d).

46. The Community Trust Act forbids "transfer[ring] an individual to federal immigration authorities unless presented with a valid judicial warrant," Md. Code Ann., Corr. Servs. § 8-805(b)(2)(iv), even though federal immigration law provides that "the Attorney General *shall* detain [an illegal alien]" "[d]uring the removal period," which begins upon release from "detention or confinement," 8 U.S.C. § 1231(a)(1)(B)(iii), which includes state and local custody. *See also* 8 C.F.R. § 287.7(d) (temporary detention required upon presentation of a detainer "in order to permit assumption of custody" by the federal government).

47. The Community Trust Act runs directly afoul of 8 U.S.C. § 1373 by forbidding state and local officers from "provid[ing] federal immigration authorities with information about an individual obtained in the course of the [state or local officers'] duties unless required by a valid court order." Md. Code Ann., Crim. Proc. § 5-104(b)(2)(v). Indeed, the Community Trust Act prohibits local correctional facilities from even "*inquir[ing] about* or *investigat[ing]* an individual's citizenship, immigration status, or place of birth." *Id.* (emphasis added); *see also* Md. Crim. Proc. Code Ann. § 5-104(b)(2) (prohibiting law enforcement agents from "inquir[ing] about an individual's citizenship, immigration status, or place of birth during a stop, a search, or an

arrest" and from "detain[ing], or prolong[ing] the detention of, an individual … for the purpose of investigating the individual's citizenship or immigration status").

48.     The Community Trust Act conflicts with 8 U.S.C. § 1644, which states that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." Maryland has therefore prohibited the activities that federal law expressly ensures state and local officials may perform.

49.     Although the Act directs "State correctional facilit[ies]" to "provide notice to federal immigration authorities of the release of an individual who is the subject of [a certain type of] active immigration detainer within 48 hours before the release of the individual," Md. Code Ann., Corr. Servs. § 8-805(c)(2), the Act expressly disavows that requirement applying to "the Baltimore City Detention Center" or "the centralized booking facility in Baltimore City that is operated by the Division of Pretrial Detention and Services in the Department." *Id.* § 8-805(c)(1). And the Act's requirement applies only to *State* correctional facilities, not the *local* correctional facilities who are subject to the Act's above limitations in the first instance. *Id.*; *see also* Guidance at 7–8.

50.     The Attorney General's Guidance purports to resolve the tension between the Community Trust Act and federal law by claiming that the Act does not require state law enforcement officers to withhold "citizenship or immigration status information." Guidance at 5. But there is no textual basis whatsoever in that Act for that contrived carveout. The Community Trust Act could not be clearer: "a law enforcement agent may not, during the performance of regular police functions[,] … provide federal immigration authorities with ***information about an***

*individual* obtained in the course of the law enforcement agent's duties unless required by a valid court order." Md. Code Ann., Crim. Proc. § 5-104(b)(2)(v); *see also Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234–35 (4th Cir. 2014) (applying the Maryland legal principle that courts "will give effect to the statute as it is written" when "the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning"); *Elsberry v. Stanely Martin Cos., LLC*, 286 A.3d 1, 12–13 (Md. 2022) (noting that "this Court will neither add nor delete language to reflect an intent not evidenced in the plain language" and will not "construe statutory language with forced or subtle interpretations that limit or extend its application" (alterations and quotation marks omitted)).

51.     Moreover, the Act does not refer only to "citizenship or immigration status"—but to "***information regarding*** the citizenship or immigration status" of an individual. 8 U.S.C. § 1373 (emphasis added); *see also id.* § 1644 ("information regarding the immigration status, lawful or unlawful, of an alien in the United States"); *Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (noting that "the use of 'regarding' in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject"). Information regarding an alien's release from state custody plainly qualifies as information regarding his immigration status because it starts the federal statutory clock for removal of the alien. *See* 8 U.S.C. § 1231(a)(1)(B)(iii) (noting that removal period for a removable alien begins "the date the alien is released from detention or confinement").

52.     The Community Trust Act's restrictions on detention, transfer of removable aliens, and even ICE notification absent a judicial warrant or court order (with limited exceptions), conflict with federal law, which establishes a system of civil administrative warrants as the basis

for immigration arrest and removal, and does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. §§ 1226(a), 1231(a).

53. The Community Trust Act singles out Federal immigration enforcement authorities for its disfavored treatment. The Act specifies (a) that "judicial warrants" and "court orders" do not include documents issued by "the United States Department of Homeland Security," "the United States Department of Justice," or "any successor agency," Md. Code Ann., Crim. Proc. § 5-104(a)(3); Md. Code Ann., Corr. Servs. § 8-805(a)(3), (a)(6); (b) that local correctional facilities "may not … detain or prolong the detention of an individual … at the request of ***federal immigration authorities*** unless presented with a valid judicial warrant," Md. Code Ann., Corr. Servs. § 8-805(b)(2)(ii) (emphasis added); (c) that local correctional facilities "may not … notify ***federal immigration authorities*** that an individual is in custody unless required by a valid court order or judicial warrant," *id.* § 8-805(b)(2)(iii) (emphasis added); (d) that local correctional facilities "may not … transfer an individual to ***federal immigration authorities*** unless presented with a valid judicial warrant," *id.* § 8-805(b)(2)(iv) (emphasis added); and (e) that state law enforcement agents "may not … provide ***federal immigration authorities*** with information about an individual obtained in the course of the law enforcement agent's duties unless required by a valid court order," Md. Code Ann., Crim. Proc. § 5-104(b)(2)(v) (emphasis added).

54. The Community Trust Act impedes DHS's ability to readily obtain from local law enforcement the release date of aliens whom DHS has reason to believe are removable from the United States as well as DHS's ability to facilitate the transfer of custody, even where DHS presents a congressionally authorized civil administrative warrant of arrest or removal, *see* 8 U.S.C. §§ 1226(a), 1231(a), or has transferred those aliens to local law enforcement in the first instance to permit their prosecution for a state crime.

18

55.    The harms visited by the Community Trust Act's obstructive innovations are not merely theoretical. On May 29, 2026, a warden of the Worcester County Jail in Snow Hill, Maryland—a local correctional facility that had historically cooperated with ICE—contacted an acting Supervisory Detention and Deportation Officer to explain that, in accordance with the Community Trust Act, the facility would no longer honor ICE detainers, release individuals to ICE custody, or notify ICE when individuals are in custody and ready for release. As a direct result, the facility denied a scheduled ICE pickup that morning and did not release the individual in question to ICE custody.

56.    State officials have made clear that Worcester County Jail's approach is the right one under the Community Trust Act. On June 20, the Montgomery County Sheriff's Office released a detainee to ICE, pursuant to a routine detainer request.[11] In response, the Montgomery County Council President castigated the office, saying she was "extremely frustrated" that the sheriff "failed to ensure that law enforcement policies and practices in the Sheriff's Office adhere to the Maryland Community Trust Act."[12]

57.    In rejecting congressionally authorized means of enforcing federal immigration law, in requiring judicial warrants, and in restricting access to information, these provisions constitute unlawful direct regulation of and discrimination against the Federal Government.

*      *      *

58.    The Community Trust Act and its accompanying guidance threaten and harm the United States' sovereign interest in the supremacy and enforcement of federal law, specifically the

---

[11] Joe Ramsey, *Montgomery County Sheriff's Office admits detainee was improperly sent to ICE*, WUSA (June 20, 2026), https://www.wusa9.com/article/news/politics/immigration-news/montgomery-county-sheriffs-office-admits-detainee-was-improperly-sent-to-ice-council-maryland-trust-act/65-b29faec0-3dbe-4306-8651-7b20031d5f8f.

[12] *Id.*

INA. The challenged provisions also undermine and conflict with federal immigration enforcement policy and impose financial harm on the United States and taxpayers by increasing the costs of immigration enforcement in Maryland. A favorable ruling would redress the United States' harms.

59. Maryland has no lawful interest in assisting removable aliens to evade federal law enforcement. The State's prohibitions on cooperation with federal immigration agencies have endangered public safety, resulting in criminals being released into Maryland rather than turned over to immigration authorities for removal from the United States, as required by Congress.

60. The challenged laws are not a mere passive effort to avoid providing state or local resources to federal officials but rather are an active and deliberate effort to obstruct federal immigration enforcement by, among other things, impeding the communication between federal, state, and local law enforcement officials, and the safe apprehension and detention of unlawfully present aliens.

61. The Community Trust Act is an obstacle to the Federal Government's enforcement of our Nation's immigration laws, are expressly preempted, constitute unlawful direct regulation of the Federal Government, and constitute discrimination against federal immigration enforcement.

**CLAIMS FOR RELIEF**

**COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE AND THE INA
(EXPRESS PREEMPTION)**

62. Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully stated herein.

63. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall

be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), "regulat[es] the United States directly," *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted), or "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

64.     The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

65.     The Community Trust Act is expressly preempted by 8 U.S.C. §§ 1373 and 1644's requirement that States "not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373; *see also* 8 U.S.C. § 1644 (similar).

66.     The Community Trust Act expressly forbids state law enforcement officials from "provid[ing] federal immigration authorities with information about an individual obtained in the course of the law enforcement agent's duties unless required by a valid court order." Md. Code Ann., Crim. Proc. § 5-104(b)(2)(v).

67.     The Act also generally prohibits local correctional facilities from "notify[ing] federal immigration authorities that an individual is in custody unless required by a valid court order or judicial warrant." Md. Code Ann., Corr. Servs. § 8-805(b)(2)(iii).

68.     These provisions thus fall within the heartland of what 8 U.S.C. § 1373 and § 1644 preempt.

69. The Community Trust Act is thus preempted by federal immigration law in violation of the Supremacy Clause.

**COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE AND THE INA
(CONFLICT PREEMPTION)**

70. Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully stated herein.

71. State law is also preempted to the extent of any conflict with a federal statute. *Crosby*, 530 U.S. at 372. That includes, for example, if it is impossible to comply with both state and federal law, and where the challenged law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73 (citation omitted).

72. The Community Trust Act "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *United States v. Locke*, 529 U.S. 89, 109 (2000) (citation omitted).

73. Federal law codifies an "extensive and complex" statutory scheme for the "governance of immigration and alien status." *Arizona*, 567 U.S. at 395. This scheme reflects federal authority to inspect, interrogate, investigate, arrest, detain, and remove aliens who are suspected of being, or are found to be, unlawfully in the United States. *E.g.*, 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

74. Federal law further contemplates cooperation, including sharing resources and information, between state and local authorities and the Federal Government to achieve uniform governance of immigration and alien status. *E.g.*, 8 U.S.C. §§ 1226(a), (c), (d), 1231(a), 1357(g).

75. Federal law also authorizes the use of immigration detainers, warrants, subpoenas, and other mechanisms to assist in the arrest and removal of aliens. *See* 8 U.S.C. §§ 1103(a)(3), 1225(d)(4), 1226(a), (c), 1231(a), 1357(d); 8 C.F.R. § 287.7.

76. Federal law makes clear that efforts to hamper its federal immigration enforcement mandates are prohibited by imposing affirmative penalties on attempts to shield, harbor, or conceal aliens from detection by federal law enforcement. *See* 8 U.S.C. § 1324(a)(1)(A)(ii).

77. Nonetheless, the Community Trust Act frustrates the accomplishment and execution of federal immigration law, creates obstacles that undermine general federal immigration enforcement efforts, and inhibits cooperation underlying the immigration laws, barring state and local officials from sharing material with federal immigration officials even when they wish to do so.

78. Federal law does not contemplate any of those limitations on federal immigration authorities' ability to interrogate or inspect aliens who are unlawfully present in this country or otherwise enforce federal immigration law.

79. The Community Trust Act is thus conflict preempted by federal immigration law in violation of the Supremacy Clause.

## COUNT THREE – VIOLATION OF THE SUPREMACY CLAUSE AND THE INA (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

80. Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully stated herein.

81. The Community Trust Act violates basic principles of intergovernmental immunity by unlawfully regulating the Federal Government. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).

82. The Community Trust Act unlawfully directs local correctional facilities not to detain individuals at a federal immigration authority's request, notify federal immigration authorities of an individual's custody, or transfer individuals to federal immigration authorities

unless pursuant to a "valid court order" or "valid judicial warrant." Md. Code Ann., Corr. Servs. § 8-805. Likewise, the Act directs state law enforcement agents not to provide information to federal immigration authorities "unless required by a valid court order." Md. Code Ann., Crim. Proc. § 5-104.

83.    But Maryland cannot require the Federal Government to obtain such warrants or court orders when federal law expressly *declines* to demand them in the immigration context. *See* 8 U.S.C. §§ 1226(a), 1231(a). Federal law establishes a system of civil administrative warrants as the basis for immigration arrest and removal and does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See id.* §§ 1226(a), 1231(a). Maryland's judicial warrant or court order requirement directly regulates DHS's operations by imposing a requirement in excess of federal law.

84.    Accordingly, the Community Trust Act violates the Intergovernmental Immunity Doctrine by regulating the Federal Government in violation of the Supremacy Clause.

### COUNT FOUR – VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

85.    Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully stated herein.

86.    The Community Trust Act "singles out" federal immigration authorities for disfavored treatment, expressly and impliedly, which is exactly what intergovernmental-immunity principles bar. *Dawson v. Steager*, 586 U.S. 171, 178 (2019). The Act restricts *only* providing information to "federal immigration authorities," transferring individuals to "federal immigration authorities," and notifying "federal immigration authorities." Md. Code Ann., Crim. Proc. § 5-104(b)(2); Md. Code Ann., Corr. Servs. § 8-805(b)(2).

87.     Such discriminatory targeting of the Federal Government is unlawful. *See, e.g.*, *Washington*, 596 U.S. at 839 (A "state law discriminates against the Federal Government … if it singles them out for less favorable treatment or if it regulates them unfavorably on some basis related to their governmental status." (citations and alterations omitted)).

88.     Accordingly, the Community Trust Act violates the Intergovernmental Immunity Doctrine by discriminating against the Federal Government in violation of the Supremacy Clause.

## PRAYER FOR RELIEF

The United States respectfully requests the following relief:

A.     That this Court enter a judgment declaring that the challenged provisions of the Community Trust Act (S.B. 791) violate the Supremacy Clause and other federal law, are preempted by federal law, and are therefore invalid;

B.     That this Court enter a permanent injunction barring Defendants, as well as any of their successors, agents, or employees, from enforcing the challenged provisions of the Community Trust Act (S.B. 791) and any substantially similar policies, orders, or laws that may become effective in the future;

C.     That this Court award the United States its fees and costs in this action; and

D.     That this Court award any other relief it deems just and proper.

25

DATED: July 9, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director
Enforcement & Affirmative Litigation Branch

*/s/ Jackson M. Story*
JACKSON M. STORY (FL 1032001)
Trial Attorney
Justice Department, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
Telephone: (202) 451-7304
Facsimile: (202) 514-8742
Email: jackson.m.story@usdoj.gov

*Attorneys for the United States*